J-S56031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE:  ADOPTION OF:  H.I.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF:  J.E.B., SR., FATHER | No. 928 MDA 2014 |

Appeal from the Order Entered May 6, 2014
in the Court of Common Pleas of Clinton County
Orphans' Court at No.: 23-2013

BEFORE:  PANELLA, J., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED OCTOBER 29, 2014**

J.E.B., Sr. (Father), appeals from the order of the Court of Common Pleas of Clinton County, entered on May 6, 2014, that terminated his parental rights to his daughter, H.I.C., born in December of 2009.  We affirm.

C.M.P. (Mother) and S.M.P. (Stepfather) filed a petition to terminate Father's parental rights on October 7, 2013.[1]  The trial court held a hearing on that petition on April 25, 2014.  Testifying at that hearing, in addition to

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother and Stepfather are married and have a child of their own.  (**See** N.T. Hearing, at 19-20).

Mother, Father, and Stepfather, were Father's son by another marriage, J.E.B., Jr., and Father's former wife, S.M.A.

Mother and Father each testified that Father had regular and consistent contact with Child until December of 2011. (**See** N.T. Hearing, 4/25/14, at 5, 71). Thereafter, Mother precluded contact between Father and Child on the advice of Northumberland County Children and Youth Services (NCCY) because of allegations of child abuse against Father. (**See id.**, at 29-30). Father was ultimately convicted of crimes related to these allegations and began to serve an eighteen to thirty-six month sentence in a state correctional facility on August 22, 2012.[2] (**See id.**, at 47). The parties agree that Father had little, if any, contact with Child after December of 2011. (**See id.**, at 5, 43, 72). Mother and Stepfather testified that Father attempted no contact with Child from December of 2011 until Mother received a letter from Father, addressed to her, dated March 1, 2013. Mother testified that Father never attempted to contact her or Child after that date.

Father testified that he sent letters to Child each month as well as Christmas cards and other writings. On this question, the trial court resolved the issue of credibility in favor of Mother, "This [c]ourt, concerning

_____

[2] At the time of the hearing, Father was incarcerated at S.C.I. Mahanoy. (**See** N.T. Hearing, 4/25/14, at 75). Father was still incarcerated as of the date of the trial court opinion. (**See** Trial Court Opinion, 5/6/14, at 1 ¶ 2).

the allegations of Father that Father forwarded numerous items to Mother for [Child], accepts the testimony of Mother and Stepfather and rejects the testimony of Father." (Trial Ct. Op., 5/6/14, at 3 ¶ 17 [Finding of Fact]).

Mother testified that she resided at the same address from December of 2011 until August of 2012. She testified that she has had the same cell phone number from 2009 until the present and that Father knew that number. Mother also testified that the Postal Service forwarded all of her mail to her new address when she moved in August of 2012. Mail forwarded to this address included Father's letter dated March 1, 2013.

Mother testified that she did not receive any phone communications from Father other than a text message in which he asked to see Child, and two text messages asking why Mother would not talk to him. Mother responded to the request to see Child by telling Father she would not allow him to see her until NCCY advised her to permit contact. Mother did not respond to the other texts.

Mother testified that Child has no recollection of Father and was unable to recognize him from photographs. Mother and Stepfather testified that Child views Stepfather as her parent, and refers to him as "Daddy." Stepfather testified that he views Child as his biological offspring and has, and will, continue to treat her as if she were. Stepfather testified that he intends to adopt Child.

The trial court issued its order terminating Father's parental rights on May 6, 2014. Father filed his notice of appeal on June 2, 2014. Father filed his statement of matters complained of on appeal on June 6, 2014, in response to the trial court's order of June 3.[3]

Father raises the following question on appeal:

> Whether the decision of the [trial] court to terminate Father's parental rights was so against the weight of evidence as to constitute an abuse of discretion[?]

(Father's Brief, at 4).

Our standard of review is as follows:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

> Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.
>
> We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible

_____

[3] There was no objection or claim of prejudice from Mother to this late filing so we have accepted it in reliance on our decision in *In re K.T.E.L.*, 983 A.2d 745 (Pa. Super. 2009).

evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

**In re M.G.**, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

To affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be

beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

It is well-settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004). Further,

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (internal citations omitted).

To terminate parental rights pursuant to section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrated a settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.

Super. 2003). With respect to subsection 2511(a)(1), our Supreme Court

has held:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 550 Pa. 595, 602, 708 A.2d 88, 92

(1998) (case citation omitted). Further,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re N.M.B.*, 856 A.2d 847, 854-855 (Pa. Super. 2004), *appeal denied*,

872 A.2d 1200 (Pa. 2005) (citations omitted).

The Adoption Act provides that a trial court "shall give primary

consideration to the developmental, physical and emotional needs and

welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make

specific reference to an evaluation of the bond between parent and child but

our case law requires the evaluation of any such bond. *See In re E.M.*, 533

Pa. 115, 620 A.2d 481, 484 (1993). However, this Court has held that the

trial court is not required by statute or precedent to order a formal bonding

evaluation performed by an expert. ***See In re K.K.R.-S***., 958 A.2d 529, 533 (Pa. Super. 2008).

In regard to incarceration, our Supreme Court has stated:

[I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

\* \* \*

[W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). ***See e.g. Adoption of J.J.***, [511 Pa. at 605], 515 A.2d at 891 ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); ***[In re:] E.A.P.***, [944 A.2d 79, 85 (Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

***In re Adoption of S.P.***, 47 A.3d 817, 828, 830-31 (Pa. 2012).[4]

In support of his argument that the trial court abused its discretion when it terminated his parental rights, Father states, "Father testified that he wrote to [Child] at least monthly. Father's testimony was supported by the testimony of his son and his ex-wife that Father's habit was to write regularly to his children." (Father's Brief, at 12). We accord limited weight to Father's claim that he wrote to Child monthly, because we are bound by the trial court's finding that Father's testimony to that effect was not credible. Similarly, we accord limited weight to Father's statement about the testimony of his son and ex-wife, for two reasons. First, whether Father wrote regularly to another child has no relevance to the question of whether he wrote to Child here. Second, in its opinion, the trial court ignores the testimony of Father's son and his ex-wife. We conclude that the trial court found that it was not probative on the issue.

We agree with the trial court's determination that Father's incarceration was not a factor in his failure to parent Child. The trial court concluded, "Father during six (6) months previous to the filing of the Petition was incarcerated but made no effort to overcome the obstacles that are obvious from Father's incarceration. Father is required to use substantial

---

[4] Even though incarceration is discussed here in terms of subsection (a)(2), we note that the case applies to subsection (a)(1), as well.

effort to overcome the obstacle of incarceration and has done almost nothing to maintain any type of relationship with [Child]." (Trial Ct. Op., at 3-4).

The record supports the trial court's determination that "Father has for a period of at least six (6) months immediately preceding the filing of the Petition evidenced a settled purpose to relinquish Father's parental claim to [Child] and has failed to perform parental duties." (*Id.* at 3 ¶ 2).

Father does not question or discuss the trial court's determination that the termination of his parental rights will best serve Child's developmental, physical and emotional needs and welfare pursuant to subsection (b). The trial court made the following findings regarding Child's best interests:

> 18. [Child] has no memory of Father and refers to Stepfather as Daddy and Mother, Stepfather and [C]hild, along with Mother and Stepfather's other child, have formed a family unit.
>
> 19. Father has no bond with [Child].
>
> 20. Stepfather has a substantial bond with [Child].

(*Id.* at 3 ¶¶ 18-20). Based on these findings, the trial court concluded:

> 3. [Child's] developmental, physical and emotional needs and welfare will be best served by terminating Father's parental rights as Father has no bond with [Child], and Stepfather and [Child] have bonded.

(*Id.*, at 4 ¶ 3).

Our review of the record reveals that it supports the trial court's findings and that the trial court did not abuse its discretion when it found

that the termination of Father's parental rights will serve Child's best interests.[5]

The trial court's decision to terminate Father's parental rights under Sections 2511(a)(1) and (b), and to permit Child's adoption without notice to or consent from Father is supported by clear and convincing evidence. Accordingly, we conclude that there was no error of law or abuse of the trial court's discretion in the trial court's decision. **See In re L.M.**, **supra** at 511.

Order affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/29/2014

---

[5] We also note that affirmance of the trial court's decision is urged by the Guardian *ad litem*. (**See** Brief of Guardian *ad litem* for H.I.C., at 7).